WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Berendo Property, et al., | No. CV-22-01721-PHX-SMM |
| Plaintiffs, | **ORDER** |
| v. | |
| Closed Loop Refining and Recovery Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs and Defendant IMS Electronics Recycling, Inc.'s Joint Motion for Approval of Settlement Agreement. (Doc. 40).

**I.  BACKGROUND**

Plaintiffs are four companies who, between them, own two warehouses in Phoenix, Arizona. (Doc. 1 at 3). Between 2010 and 2016, Plaintiffs leased these warehouses to Defendant Closed Loop Refining and Recovery, Inc. (Id. at 4). Closed Loop used these warehouses to operate recycling centers that recycled—or claimed to recycle—CRT waste. (Id. at 11-12). CRT (cathode ray tubes) are used in older television, computer, and other electronic displays and contain lead, which is listed as a hazardous substance under the Comprehensive Environmental, Response, Compensation, and Liability Act ("CERCLA"). (Id. at 2-3).

Plaintiffs allege that Closed Loop operated a sham recycling scheme, in which it charged companies for accepting their CRT waste and—rather than recycling it in accordance with CERCLA—stockpiled and ultimately abandoned it. (Id. at 12). Plaintiffs

allege that Closed Loop accepted approximately 195 million pounds of CRT waste, of which 106 million was abandoned at the warehouses. (Id.) They allege that the cost of removing the waste and cleaning up the warehouse sites may exceed $15 million. (Id. at 20).

On October 7, 2022, Plaintiffs filed suit against 51 defendants, seeking cost recovery, declaratory relief, and common law damages. (Doc. 1). Defendants include Closed Loop and 50 Arranger/Transporter Defendants, among them IMS Electonics Recycling, Inc. ("IMS"). (Id. at 8). According to Closed Loop's records, IMS arranged for the transport of 71.5 million pounds of waste to the warehouses. (Id. at 8; Doc. 40 at 3).

The Court has previously approved a consent decree between Plaintiffs and Defendant UNICOR (Doc. 24) and a settlement agreement between Plaintiffs and Defendant California Electronic Asset Recovery. (Doc. 26).

On January 31, 2023, Plaintiffs and IMS filed a Joint Motion for Approval of Settlement Agreement. (Doc. 40). Under the settlement agreement, IMS has agreed to pay Plaintiffs $5,000,000.00. (Doc. at 40 at 20). This money will go towards response costs. (Id.) The Arizona Department of Environmental Quality has not objected to the settlement. (Doc. 40 at 50-51).

## II.     DISCUSSION

### A.     Legal Standard

In determining whether to approve a settlement in the CERCLA context, a court need not determine whether the settlement is the best possible settlement available. City of Colton v. Am. Promotional Events, Inc., 281 F. Supp. 3d 1009, 1012 (C.D. Cal. 2017). Rather, courts must determine whether the proposed settlement is procedurally fair, substantively fair, reasonable, and consistent with the policies of CERCLA. State of Arizona v. Nucor Corp., 825 F. Supp. 1452 (D. Ariz. 1992), aff'd on other grounds, 66 F.3d 213 (9th Cir. 1995), United States v. Montrose Chemical Corp. of Calif., 50 F.3d 741 (9th Cir. 1995).

///

### B. Procedural Fairness

To determine procedural fairness, courts "must look to the negotiation process and 'attempt to gauge its candor, openness, and bargaining balance.'" Nucor, 825 F. Supp. at 1456 (quoting U.S. v. Cannons Eng'g Corp., 899 F.2d 79, 86 (1st Cir. 1990)). Toward this end, the parties state that negotiations were executed in good faith and at arm's length. (Doc. 40 at 7).

The Court finds the settlement agreement was the result of procedural fairness. Both parties were represented in settlement negotiations by experienced attorneys. (Id. at 7, 24, 36, 47). The parties also considered all relevant factors when conducting negotiations. (Id. at 7).

### C. Substantive Fairness and Reasonableness

Substantive fairness "concerns the issues of corrective justice and accountability." Nucor, 825 F. Supp. at 1458. "A party should bear the costs of the harm for which it is legally responsible." Cannon, 899 F.2d at 87. In determining the reasonableness of CERCLA a settlement, courts will consider the "efficacy of the settlement in compensating the public for actual and anticipated remedial and response costs and the relative strength of the parties' litigating." Nucor, 825 F. Supp. at 1464. As part of this analysis, courts examine whether the settlement amount is proportional to the settling defendant's share of responsibility for the environmental damage. Montrose, 50 F.3d at 747; Cannons, 899 F.2d at 87.

The parties' settlement agreement is substantively fair and reasonable. Plaintiffs allege—based on Closed Loop's records—that IMS was responsible for 71.5 million out of the 195 million tons of CRT waste that reached the warehouse. This amounts to a little under 36.7% of the total CRT waste. The estimated cleanup cost is over $15 million. The $5,000,000.00 that IMS is agreeing to contribute to cleanup costs therefore represents a little over 33.3% of the total cleanup costs. Because the settlement amount is proportional to IMS' alleged share of responsibility and the funds will be put toward cleanup efforts, the settlement agreement is substantively fair and reasonable.

E.     Consistency with CERCLA

One of CERCLA's primary goals is to encourage early settlements. See Montrose at 745-56. This helps further the goal of ensuring prompt site cleanups. Nucor, 825 F. Supp. at 1464. An additional goal of CERCLA is to ensure accountability from those responsible for any abandoned waste. Id.

Parties' settlement agreement is firmly in line with these goals. This settlement is relatively prompt: filed less than three months after Plaintiffs filed their initial complaint. It will streamline any future litigation by removing a defendant from the case and will quickly transfer money into the cleanup fund. Further, it holds IMS accountable for their contribution to the abandoned CRT waste at the warehouses.

F.     *Pro Tanto* v. *Pro Rata* Crediting

Under CERCLA, district courts have discretion in allocating response costs among liable parties. Am. Cyanamid Co. v. Capuano, 381 F.3d 6, 21 (1st Cir. 2004). In determining how one defendant's settlement affects the liability of other defendants, courts may employ either a *pro tanto* or *pro rata* crediting approach. Ameripride Servs. Inc. v. Texas E. Overseas Inc., 782 F.3d 474, 483-4 (9th Cir. 2015). Under a *pro rata* approach, a court must determine the liability of all settling and non-settling defendants and then reduce the shares of non-settling defendants by the percentage of the settlor's fault. Akzo Nobel Coatings, Inc. v. Aigner Corp., 197 F.3d 302, 308 (7th Cir. 1999). Under the *pro tanto* approach, non-settling defendants' liability is simply reduced by the dollar amount of the settlements. Ameripride, 782 F.3d at 484.

 In the CERCLA context, *pro tanto* crediting encourages defendants to settle and plaintiffs to promptly and voluntarily clean up hazardous substances. Ameripride, 782 F.3d at 487. It is also easier to apply here than the *pro rata* approach, which would necessitate that the Court determine the liability of 50 other Defendants before it can approve the settlement agreement.

The Court uses its discretion to hold that IMS' settlement payment will be credited *pro tanto* in determining other Defendants' equitable shares of remediation costs.

### III. CONCLUSION

Because the settlement agreement is substantively and procedurally fair, reasonable, and consistent with CERCLA, the Court will grant the Joint Motion for Approval of Settlement Agreement (Doc. 40) and approve the settlement.

Accordingly,

**IT IS HEREBY ORDERED granting** the Joint Motion for Approval of Settlement Agreement. (Doc. 40). The Court approves the Settlement Agreement. (Doc. 40 at 16-34).

**IT IS FURTHER ORDERED dismissing** Defendant IMS Electronics Recycling, Inc. from the case and **directing** the Clerk of the Court to dismiss Defendant IMS Electronics Recycling, Inc.

**IT IS FURTHER ORDERED dismissing and barring**, except for the exceptions stated in the Settlement Agreement and except for claims asserted by the U.S. Environmental Protection Agency ("EPA") and the State of Arizona (acting on Arizona Department of Environmental Quality's behalf), all past, present, and future claims, counterclaims, and crossclaims against Defendant IMS Electronics Recycling, Inc. related to Plaintiffs' two warehouse sites.

**IT IS FURTHER ORDERED** that Defendant IMS Electronics Recycling, Inc.'s settlement payment will be credited *pro tanto* in determining other Defendants' equitable shares of remediation costs. The liability of the remaining parties shall accordingly be reduced by the dollar amount of IMS Electronics Recycling, Inc.'s settlement payments.

**IT IS FURTHER ORDERED** that this Court retains jurisdiction and shall retain jurisdiction after entry of judgment in this case to enforce the terms and conditions of the Settlement Agreement.

Dated this 31st day of January, 2023.

Honorable Stephen M. McNamee
Senior United States District Judge